**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

In re:                                                                    **FOR PUBLICATION**

PORT MORRIS TILE & MARBLE LP,                                             Chapter 7

                                                                          Case No. 21-12116 (MG)

                            Debtors.
-------------------------------------------------------------------------x
ALAN NISSELSON, as Trustee of the Estate of Port Morris
Tile & Marble LP, Debtor,
                                                                          Adv. Pro. No. 22-01137 (MG)
                            Plaintiff,

              -        against        -

MARJERRY REALTY CORP., VINJERRY REALTY
CORP., VINCENT REALTY CORP., TRUSTEES OF THE
LOCAL 7 TILE INDUSTRY WELFARE FUND, THE
LOCAL 7 TILE INDUSTRY ANNUITY FUND, and THE
TILE LAYERS LOCAL UNION 52 PENSION FUND,
TRUSTEES OF THE LOCAL 7 MARBLE INDUSTRY
PENSION FUND, THE LOCAL 7 MARBLE INDUSTRY
ANNUITY FUND, THE LOCAL 7 MARBLE INDUSTRY
TRUST FUND, TRUSTEES OF THE MOSAIC AND
TERRAZZO WELFARE, PENSION, ANNUITY, AND
VACATION FUNDS, and TRUSTEES OF THE
BRICKLAYERS & TROWEL TRADES INTERNATIONAL
PENSION FUND,

                            Defendants.
-------------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

*A P P E A R A N C E S :*

WINDELS MARX LANE & MITTENDORF, LLP
*Counsel for Plaintiff, Alan Nisselson, as Trustee*
*of the Estate of Port Morris Tile & Marble LP, Debtor*
156 West 56th Street
New York, New York 10019
By:     Leslie S. Barr, Esq.

VIRGINIA & AMBINDER LLP
*Counsel for r Creditors Trs. of the Local 7Tile, Marble, and*
*Terrazzo Benefit Funds, and Trs. of the Int'l Bricklayers &*
*Trowel Trades Int'l Pension Fund*
40 Broad Street, 7 th Floor
New York, New York 10004
By:    John M. Harras, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of Alan Nisselson as Chapter 7 Trustee (the

"Trustee") of the bankruptcy estate of Port Morris Tile & Marble LP (the "Debtor"), for a

preliminary injunction (the "P.I. Motion," ECF Doc. # 4).  Pursuant to Federal Rule of

Bankruptcy Procedure 7065, incorporating Federal Rule of Civil Procedure 65, the P.I. Motion

seeks to restrain certain defendants from prosecuting an action in federal court[1] (the "Federal

Action"), and other defendants from prosecuting an action in state court (the "State Action").[2]

The Fund Group defendants, who are the plaintiffs in the Federal Action, filed an

objection to the P.I. Motion on September 6, 2022, (*see* "Fund Group P.I. Objection," ECF Doc.

# 7), which was also the deadline for objections to the P.I. Motion.  The Marjerry Group did not

file an objection to the P.I. Motion by the September 6, 2022 deadline.[3]

---

[1]    *Trustees of the Local 7 Tile Industry Welfare Fund, et al. v. Samfet Marble, Inc., et al.* (No. 1:22-CV-00651-DG-RER), was filed in the United States District Court for the Eastern District of New York by defendants Trustee of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Local 7 Tile Funds"), Trustees of the Marble Industry Pension Fund, Marble Industry Annuity Fund, and Marble Industry Trust Fund (collectively, the "Local 7 Marble Funds"), Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Local 7 Terrazzo Funds"), and Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Fund") (the Local 7 Tile Funds, Local 7 Marble Funds, Local 7 Terrazzo Funds, and International Fund are collectively referred to as the "Fund Group").
[2]    *Marjerry Realty Corp., et al. v. Port Morris Tile & Marble LP et al.* (Index No. 158739/2021), is an Article 52 turnover proceeding filed in the Supreme Court of the State of New York, County of New York, brought by defendants Marjerry Realty Corp., Vinjerry Realty Corp., and Vincent Realty Corp. (collectively, the "Marjerry Group").
[3]    At the hearing on September 13, 2022, the Court granted the Trustee's P.I. Motion with respect to the Marjerry Group's State Action.  The order was entered on September 29.  (ECF Doc. # 13.)  This Opinion only addresses the issues relating to the Funds Group's Federal Action.

This case turns on whether the claims asserted by the Fund Group are property of the Debtor's chapter 7 estate. If so, only the Chapter 7 Trustee may assert the claims that are property of the estate, and the Fund Group can be enjoined from prosecuting those claims in their district court action. To the extent that any of the claims asserted are not property of the estate, but rather belong to the Fund Group, the automatic stay does not apply, and those claims can be asserted by it in the district court.

It is important to recognize at the outset that the Fund Group seeks to recover unpaid contributions on behalf of multiemployer benefit plans to which the Debtor and other unrelated employers in the industry are required to contribute. The substantial unpaid contributions damage the multiemployer plans, not just affecting the Debtor's former employees, but potentially affecting all covered employees of other unrelated employers that must contribute to the plan. In other words, the damage is not limited to creditors of the Debtor.

The Fund Group's Federal Action complaint includes two causes of action—one arising under ERISA and the other based on state law. The Court concludes below that neither of the Fund Group's causes of action are property of the estate, and thus the preliminary injunction is **DENIED** with respect to the Federal Action.

## I.    BACKGROUND

### A.  The Main Case and Present Adversary Proceeding

This adversary proceeding pertains to certain actions in state and federal court related to the Debtor's business. The Debtor filed its voluntary petition for relief under Chapter 7 on December 23, 2021. *See In re Port Morris Tile & Marble LP* (Case No. 21-12116 (MG)) (ECF Doc. # 1.) The Plaintiff in this adversary proceeding, Alan Nisselson, was appointed as the Chapter 7 trustee and is the representative of the Debtor's bankruptcy estate. ("Complaint," ECF Doc. # 1, ¶ 20.) The bankruptcy case is still pending in this district. (*Id.* ¶ 2.)

3

The Trustee brings this action against the Fund Group to enjoin the Federal Action.  (*Id.* ¶ 1.)  The Trustee argues that the Federal Action violates the automatic stay and that the Trustee has exclusive authority to investigate and prosecute the claims.  (*Id.* ¶ 1.)

### B.  The Fund Group and its Federal Action

The Fund Group defendants are all employer and employee trustees of multiemployer labor-management trust funds.  (*Id.* ¶ 8.)  On February 4, 2022, the Fund Group commenced the Federal Action against several alleged affiliates of Debtor.  *See Trustees of the Local 7 Tile Industry Welfare Fund, et al. v. Samfet Marble, Inc., et al.*, No. 1:22-cv-00651-DG-RER (ECF Doc. # 1).  The Debtor, protected by the automatic stay when the Federal Action was filed, is not a defendant in the Federal Action.  The operative and first amended complaint in the Federal Action was filed on April 25, 2022 and is attached to the Complaint in this action.  ("Federal Action Complaint," Ex. B. to the Complaint, ECF Doc. # 1-2.)  The Fund Group alleges that the Debtor owes its constituent members more than $3.5 million in unpaid contributions pursuant to certain collective bargaining agreements and provisions of federal law including Sections 502 and 515 of the Employee Retirement Security Act of 1974, ("ERISA"), 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Complaint ¶ 13; Federal Action Complaint ¶ 105.)  The Fund Group brought the Federal Action to recover this debt from defendants Samfet Marble, Inc. c/o S.A.M. Samfet Group, NYC Marble Acquisitions L.P., NYC Marble Acquisitions GP, Inc. (a/k/a NYC Acquisitions GP, Inc., Port Morris Tile & Marble Boston LP (the "Corporate Defendants") and Georges Berberi, and Matthew Auerbach (the "Individual Defendants" and together with the Corporate Defendants, the "Federal Action Defendants").  (Federal Action Complaint ¶¶ 1–2.)

The Complaint contains two causes of action—the first under ERISA and the second under state law.  Pursuant to the first cause of action, the Fund Group argues that the Corporate

Defendants are liable for the unpaid contributions as "alter egos of, successors of, and a single employer with" the Debtor, (Complaint ¶ 16), under the "other appropriate equitable relief" section of ERISA. (*See* "Fund Group MTD Opposition," Ex. 2 to Barr Decl., ECF Doc # 4-5 at 12 (quoting 29 U.S.C. § 1132(a)(3).)  Under the second cause of action, the Fund Group argues that the Federal Action Defendants' corporate veil should be pierced under New York state law to hold the Individual Defendants liable for the Corporate Defendants' ERISA obligations. (*Id.* ¶ 14; Federal Action Complaint ¶ 111.)  The Federal Action does not seek to pierce the corporate veil of the Debtor.  Rather, the Federal Action Complaint seeks to pierce the corporate veils of the Corporate Debtors.

The court in the Federal Action held a pre-motion conference on June 16, 2022 and set a briefing schedule for a motion to dismiss. *Samfet Marble, Inc., et al.*, No. 1:22-cv-00651-DG-RER (ECF Doc. # 18.)  On July 7 2022, the Federal Action Defendants moved to dismiss the Federal Action Complaint, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. ("Motion to Dismiss," Ex. 1 to Barr Decl., ECF Doc # 4-4.)  Specifically, they argued that the Fund Group lacks standing to bring these claims because the action violates the automatic stay and because the Trustee has the sole and exclusive right to bring these actions. (*Id.* at 2.)  The Fund Group opposed the motion to dismiss, arguing that its claims are outside the Debtor's bankruptcy estate and scope of the Trustee's jurisdiction, and outside the reach of the automatic stay. (*See* Fund Group MTD Opposition at 2.)

Briefing closed on August 4, 2022, when the Federal Action Defendants filed their reply brief. ("MTD Reply Brief Opposition," Ex. 3 to Barr Decl., ECF Doc # 4-6.)  The motion is still pending in the Federal Action, with no hearing set for oral argument.  The Federal Action

Defendants filed a letter on August 19, 2022, informing the court that the P.I. Motion was filed

in this case. *See Samfet Marble, Inc., et al.*, No. 1:22-cv-00651-DG-RER (ECF Doc. # 30).[4]

In the present action, the Trustee filed the P.I. Motion arguing that the pendency of the

Federal Action violates the automatic stay.  (Complaint ¶ 33.)  The Trustee also argues that the

pendency of the Federal Action interferes with the Trustee's exclusive right to pursue actions to

determine that some person or entity is the alter ego of the Debtor or to pierce the "corporate

veil" of the Debtor.  (*Id.* ¶¶ 36–38.)  The Trustee's Motion does not address the "single

employer" theory of liability under ERISA.[5]  For these reasons, the Trustee seeks a mandatory

injunction directing the Fund Group to dismiss the Federal Action without prejudice.  (*Id.* ¶ 40.)

On September 6, 2022, the Fund Group opposed the P.I. Motion arguing first that the

bankruptcy court does not have jurisdiction as these matters are not "core" matters under 28 USC

§ 157.  (Fund Group P.I. Objection ¶ 2.)  The Fund Group also argues, as it does in the Federal

Action, that the property it seeks is outside the Debtor's estate, which places this property

outside the scope of the automatic stay and injunctive relief.  (*Id.* ¶ 1.)

## II.   <u>LEGAL STANDARD</u>

### A.  Jurisdiction

The federal district courts have original jurisdiction for "all cases under title 11" and "all

civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C.

§ 1334(a) & (b).  In turn, 28 U.S.C. § 157(a) provides that district courts may refer all cases or

proceedings over which they have jurisdiction under 28 U.S.C. § 1334(a) or (b) to the

---

[4]     Confusingly, the Trustee's Brief in Support of the P.I. Motion states that "[t]he defendants in the Federal Court Action have asked the presiding judge for a pre-motion conference before making a motion to dismiss citing the above authorities. That request has not been ruled on and remains pending." ("P.I. Motion Brief," ECF Doc. # 4-7 at 8.)  Nothing else on the docket indicates that there is such a request pending.

[5]     The Fund Group brings the "single employer" theory under the same labor laws—specifically, Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132, 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.  (Federal Action Complaint ¶ 105.)

bankruptcy courts.  The Southern District's Amended Order of Reference refers all bankruptcy

cases and proceedings to the bankruptcy court in this district.  *See, e.g.*, *In re FairPoint*

*Commc'ns, Inc.*, 452 B.R. 21, 27 (S.D.N.Y. 2011); Gen. Order M-431 (S.D.N.Y. Jan. 31. 2012)

("Pursuant to 28 U.S.C. Section 157(a) any or all cases under title 11 and any or all proceedings

arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy

judges for this district.").

The Supreme Court has instructed lower federal courts to construe the jurisdictional

grants in Sections 1334 and 157 broadly, recognizing that "Congress intended to grant

comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and

expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*,

514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Where the district courts refer proceedings to the bankruptcy judges of their district,

bankruptcy courts may enter final judgments in "all core proceedings arising under title 11, or

arising in a case under title 11."  28 U.S.C. §§ 157(a), (b)(1).  In non-core proceedings, absent

consent, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law

to the district court."  *Id.* § 157(c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 475 (2011).

Additionally, even in statutorily "core" cases, Article III of the United States Constitution limits

bankruptcy judges from entering judgments on certain claims between private parties that "do

not stem[] from the bankruptcy itself" or would not "necessarily be resolved in the claims

allowance process." *Stern*, 564 U.S. at 499.  Importantly, the issue of *authority* to enter final

orders or judgment does not implicate subject matter jurisdiction of the bankruptcy courts.  If the

district courts have jurisdiction over bankruptcy cases and proceedings, so do the bankruptcy

courts.  To the extent that the Fund Group argues that the bankruptcy court does not have

jurisdiction over this case, it is mistaken.  Further, as explained more fully below, the issue of

whether the claims asserted by the Fund Group are property of the estate is a core issue as to

which the bankruptcy court can enter final orders or judgment.

### B.  Preliminary Injunction

#### 1.  Injunctions Pursuant to Bankruptcy Rule 7065

A party seeking a preliminary injunction under Rule 65 of the Federal Rules of Civil

Procedure must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits

or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation

and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d

Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.

1979)).  The traditional standards for issuance of an injunction pursuant to Rule 65 are made

applicable to adversary proceedings under Bankruptcy Rule 7065.  *See Eastern Air Lines v.*

*Rolleston (In re Ionosphere Clubs, Inc.)*, 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990).

#### 2.  Injunctions Pursuant to Section 105(a) of the Bankruptcy Code

Additionally, "[t]he court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title" pursuant to section 105(a) of the Bankruptcy

Code.  11 U.S.C. § 105(a).  The Second Circuit has held that there is statutory authority under

section 105(a) to enjoin the pursuit by creditors of actions that a bankruptcy estate has the

exclusive right to pursue.  *See Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740

F.3d 81, 87–93 (2d Cir. 2014).  To the extent that the irreparable harm requirement has not been

satisfied in these cases, such cases have held the requirement to be unnecessary.  *See Sec. Inv'r*

*Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 436 (Bankr. S.D.N.Y. 2010)

("Because injunctions under section 105(a) are authorized by statute, they need not comply with

the traditional requirements of Rule 65."); *McHale v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670, 674 (Bankr. S.D.N.Y. 2008) ("Rather, 'the bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.'") (quoting *Johns-Manville Corp. v. Colo. Ins. Guar. Ass'n (In re Johns-Manville Corp.)*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988)).

## III.  <u>DISCUSSION</u>

### A. **Jurisdiction**

The first issue raised is whether this Court has proper statutory and constitutional jurisdiction to enjoin the Federal Action.  The Fund Group objects on grounds that this Court does not have jurisdiction to enjoin the Federal Action from proceeding, "as such matters are not 'core' matters under 28 U.S.C. § 157."  (Fund Group P.I. Objection ¶ 2.)  The Fund Group is incorrect, as the Court has both statutory and constitutional jurisdiction to order the injunctive relief requested, if otherwise warranted.  The issue of whether the claims asserted by the Fund Group are property of the estate is a "core" issue as to which the Court may enter final orders or judgment.

At the outset, determinations as to jurisdiction do not depend on whether a matter is core or non-core—a bankruptcy court can have jurisdiction over both core and non-core matters.  *See In re Robert Plan Corp.*, 777 F.3d 594, 597 (2d Cir. 2015) ("In addition to having jurisdiction over 'core proceedings,' a bankruptcy court has jurisdiction to 'hear a proceeding that is not a core proceeding but that is otherwise related to a case under [the Bankruptcy Code].'") (quoting 28 U.S.C. § 157(c)(1).)  The Fund Group cites the Supreme Court decision in *Stern* and the Seventh Circuit decision in *Wellness* for the proposition that this Court does not "have jurisdiction over an alter ego claim asserted against a non-debtor because such relief was 'in no

way derived from or dependent upon bankruptcy law.'"[6]  Neither decision supports that

conclusion.  *Stern* is inapplicable here, as it simply held that there are constitutional limits to a

bankruptcy court's *authority* to enter final orders and judgments in statutorily core matters which

nevertheless require an Article III decisionmaker to enter final orders or judgment.  *See Stern*,

564 U.S. at 482–503.  *Wellness* similarly addressed issues related to the bankruptcy courts'

ability to enter final orders and judgments and is also inapplicable.  *See Wellness*, at 727 F.3d at

19–20.  These cases did not otherwise limit bankruptcy courts' jurisdiction with respect to non-

final orders and judgments.

It is well established in the Second Circuit that bankruptcy courts have jurisdiction and

authority to enjoin other proceedings that may interfere with the bankruptcy case.  *See In re*

*Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012) (noting that the holding of *Stern* was narrow,

and that "[e]njoining litigation to protect bankruptcy estates during the pendency of bankruptcy

proceedings, unlike the entry of the final tort judgment at issue in *Stern*, has historically been the

province of the bankruptcy courts.") (citation omitted).  As the Trustee correctly points out, this

is so regardless of whether the proceeding is a core or non-core matter.  *See Celotex*, 514 U.S. at

309–13 (1995) (holding that bankruptcy court was entitled to enjoin actions against non-debtors

where it had "related to" jurisdiction over the actions under 28 U.S.C.A. §§ 157(a), 1334(b)).

"[T]he touchstone for bankruptcy jurisdiction remains 'whether its outcome might have

any "conceivable effect" on the bankruptcy estate,'" i.e., whether one possible result of the suit

"will be the removal of assets from the bankruptcy estate."  *Quigley*, 676 F.3d at 57–58 (quoting

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)).  The Second Circuit has

---

[6]       (Fund Group P.I. Objection ¶ 2) (quoting *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 774-776 (7th Cir. 2013), *aff'd,* 575 U.S. 665 (2015) (quoting *Stern v. Marshall*, 564 U.S. 462, 499 (2011)) (internal quotations omitted)).

explicitly held that jurisdiction exists to enjoin litigation against non-debtors where the plaintiff in the case "can only proceed on [its] claims if it establishes that the [debtor's misconduct] occurred." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).

Under these precedents, the Court has jurisdiction here. By the Fund Group's own allegations, its claims against the non-debtor defendants in the Federal Action are intertwined with the Debtor's own alleged wrongdoing. (Fund Group MTD Opposition at 9) (Federal Action Defendants "fail[ed] to remit contributions . . . despite being obligated to do so *on account of their alter ego, successor, and/or single employer status with the Debtor*") (emphasis added). Moreover, the Fund Group's allegations suggest that it seeks to recover assets from the non-debtors that could conceivably be property of the bankruptcy estate, pending the outcome of certain legal determinations discussed below or other proceedings related to the bankruptcy case. (*See id.* at 3–4) (stating that the Federal Action Defendants "used their complete domination and control over Debtor . . . to shift all operations and assets of Debtor" to one of the defendants).

Having concluded that the Court has jurisdiction to resolve the issues raised in this case, the Court proceeds to consider whether the Trustee has demonstrated his entitlement to injunctive relief.

**B. Preliminary Injunction for the Federal Action**

Having determined that this Court has jurisdiction, we turn to the issue of whether a preliminary injunction is appropriate under section 105 of the Bankruptcy Code and/or Rule 65 of the Federal Rules of Civil Procedure and Rule 7065 of the Bankruptcy Rules. As set forth in further detail below, the Trustee has not shown a likelihood of success on the merits or that the balance of hardships tips decidedly in his favor in light of serious questions going to the merits. As a result, enjoining the Federal Action is not appropriate here.

1.  Likelihood of Success under Bankruptcy Rule 7065 and Appropriateness
    under Section 105 of the Code

Determining Plaintiff's likelihood of success on the merits and whether the Court has the

authority to issue an injunction under section 105 of the Bankruptcy Code turn on the same

question: whether the Fund Group's claims in the Federal Action are general (as opposed to

particular), such that they may only be asserted by the Trustee in the bankruptcy case.  The Court

finds that both the ERISA claim and state law veil piercing claim are not property of the estate

and, therefore, the Trustee is not likely to succeed on the merits.

Under section 541, the filing of the bankruptcy case charges the trustee with collecting

the property of the debtor to form the bankruptcy estate.  *See Kalb, Voorhis & Co. v. Am. Fin.*

*Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (observing that trustee or debtor-in-possession has control

over claims belonging to the bankruptcy estate).  The Trustee has "exclusive standing" to assert

causes of action belonging to the estate.  *See 1031 Tax Grp., LLC*, 397 B.R. 670, 679 (Bankr.

S.D.N.Y. 2008) (citation omitted).  A creditor's pursuit of claims against non-debtor third parties

that belong to the estate violates the automatic stay.  *See St. Paul Fire & Marine Ins. Co. v.*

*PepsiCo, Inc.*, 884 F.2d 688, 706–707 (2d Cir. 1989).

The right to pursue state law alter ego or veil-piercing claims against non-debtor parties

may become the exclusive right of the trustee if the claims are of the type generally available to

creditors.  *St. Paul Fire*, 884 F.2d at 700–701 ("Congress intended to protect all creditors by

making the trustee the proper person to assert claims against the debtor.  This reasoning extends

to common claims against the debtor's alter ego or others who have misused the debtor's

property in some fashion."); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 851–52

(Bankr. S.D.N.Y. 1994).  However, where "plaintiff assert[s] a personal right of action against [a

non-debtor], as opposed to a right of action belonging to the debtor's estate, the bankruptcy

trustee [does] not have standing to vindicate the right and the automatic stay [does] not take

effect." *Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 541 (S.D.N.Y.

1987) (discussing *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986)).

Here, the parties agree that an action against a non-debtor third party is property of the

estate, as opposed to a personal right of action, where it alleges "no particularized injury arising

from it" and "could be brought by any creditor of the debtor." *St. Paul Fire*, 884 F.2d at 701. If

the claim is not particularized, it cannot be brought without violating the automatic stay. *See,*

*e.g.*, *1031 Tax Grp., LLC*, 397 B.R. at 687 (holding that pursuit of derivative claims by creditor

that belonged to the estate violated the automatic stay).

### a. Claims Against the Corporate Defendants: ERISA Claims

The issue with respect to Corporate Defendants is whether the ERISA alter ego claims

are particular or general. The Court finds that the Trustee has failed to show that he is likely to

succeed in establishing that the ERISA claims in the Federal Action are general.

There is no controlling precedent that addresses if and when ERISA claims are general as

opposed to particular, but two principles from the caselaw are instructive. First, if a trustee can

bring a creditor's *exact claim*, then it is general. *See St. Paul Fire*, 884 F.2d at 702–704 (holding

that the debtor, and thus trustee, had the ability to bring alter ego action under state law that

creditor sought to bring). Second, even if the trustee cannot bring the exact claim as a creditor,

the creditor's claim may still be general where the trustee is empowered to bring actions based

on the same factual harm alleged by the creditor. *See In re Madoff*, 818 F. App'x 48 (2d Cir.

2020) (finding that plaintiffs' claims for control person liability under the federal securities laws

were "duplicative or derivative of the claims brought by the Trustee, or which could have been

brought by the Trustee") (citation omitted).  If neither of these are true, then the claim is

particular.

The Fifth Circuit summarized the framework for analysis accurately in

*Schimmelpenninck v. Byrne (In re Schimmelpenninck*, 183 F.3d 347 (5th Cir. 1999).  The court

explained:

> To capsulize this legal framework for determining whether the trustee or an
> individual creditor is the appropriate actor, we categorize three kinds of action: 1)
> Actions by the estate that belong to the estate; 2) Actions by individual creditors
> asserting a generalized injury to the debtor's estate, which ultimately affects all
> creditors; and 3) Actions by individual creditors that affect only that creditor
> personally.  The trustee is the proper party to advance the first two of these kinds
> of claims, and the creditor is the proper party to advance the third.

*Id.* at 359-60.

Thus, the Court considers it necessary to pursue both lines of inquiry, i.e., (1) whether the

Trustee can bring claims pursuant to ERISA; and (2) even if not, whether the Fund Group's

ERISA claims allege a factual harm that affects all creditors and are general as a result.

> (i)    Whether the Trustee has Standing to Bring an Action Under
>        ERISA

The first issue is whether the Trustee has standing to bring an alter ego claim under

ERISA itself.  The problem here—and the Fund Group's main argument—is that the ERISA

statutory provisions limit standing to "participant[s], beneficiar[ies], or fiduciar[ies]."  (*See* Fund

Group MTD Opposition at 8–13 (citing 29 U.S.C. § 1132(a).)[7]  And while the ERISA caselaw

recognizes the availability of alter ego and veil piercing theories to such claimants, *see Trs. of the*

*N.Y. City Dist. Council of Carpenters Pension Fund v. Lee*, 2016 WL 1064616, *14 (S.D.N.Y.

Mar. 14, 2016), the caselaw and statutes are silent whether a party like the debtor (and by

---

[7]    In opposing the motion for a preliminary injunction here, the Fund Group relies heavily upon their
opposition to the motion to dismiss in the Federal Action.  (*See generally* Fund Group P.I. Objection; Fund Group
MTD Opposition.)

extension, its trustee) can make use of such theories against a dominating entity to recover ERISA funds.  For the present inquiry, the cases in this Circuit involving a trustee's standing under state law, like *St. Paul Fire*, are inapposite.  *See* 884 F.2d at 702–704.

With respect to the first cause of action under ERISA, the initial difficulty here is that it is unclear whether the Trustee even argues that it can step into the shoes of the Fund Group to bring the ERISA claim under the ERISA statute and federal common law.  To the extent the Trustee does, there is an immediate hurdle arising from cases such as *Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416, 428–29 (1972) and its progeny.  For example, the Second Circuit has explained that "a bankruptcy trustee is not empowered 'to collect money not owed to the estate'; the trustee's proper task 'is simply to collect and reduce to money the property of the estates for which (he is trustee).'"  *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 67 (2d Cir. 2013) (quoting *Caplin*, 406 U.S. at 428–29 (1972)).

The Court recognizes that other lower court decisions in this Circuit have concluded that certain ERISA claims are general, as opposed to particular, and cannot be pursued by the parties who are expressly provided with standing under ERISA.  *See Tr. of the Plumbers Local Union No. 1 v. ENOBRAC Plumbing Inc.*, 2018 WL 3635049, at *11 (E.D.N.Y. Feb. 12, 2018); *Labarbera v. United Crane & Rigging Servs., Inc.*, 2011 WL 1303146, at *8 (E.D.N.Y. Mar. 2, 2011); *Maney v. Fischer*, 1998 WL 151023, at *2 (S.D.N.Y. Mar. 31, 1998).  It is necessary to address these cases as they not only involved ERISA claims, but discussed federal common law in performing the particularity analysis, with no discussion of the trustees' abilities to bring claims under state law.  Thus, one potential reading of these cases is that they support the proposition that the trustee had standing to bring avoidance actions pursuant to the ERISA statute itself.

The problem with that reading is that these cases do not actually articulate the statutory basis for the trustee's ability to do so, which this Court would expect if that were indeed the basis for the holdings. With no language explaining a trustee's standing to bring ERISA claims, and with the principles of *Caplin* operating in the background, the Court considers it equally plausible that these cases simply acknowledged that the ERISA claims seeking to extend liability to third parties were governed by federal common law, but were general due to the parallels to the state law claims that the trustees were enabled to bring.[8]

The Court recognizes that *Caplin* does not completely foreclose the ability of a trustee to bring claims on behalf of a creditor where authorized by the underlying substantive law. The Bankruptcy Code potentially solves half of the equation in allowing trustees to bring avoidance actions for transfers that are "voidable under applicable law." *See* 11 U.S.C. § 544(b)(1) (stating that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable . . ."). The Second Circuit has cited this section 544 in multiple cases as the source of a trustee's powers to bring the same claims as creditors under state law. *See St. Paul Fire*, 884 F.2d at 700 (citing Section 544); *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 83 (2d Cir. 2019) (citing Section 544(b)(1), specifically). The question then is whether there is a principled basis for treating a claim under ERISA differently simply because it is a federal statute.[9]

---

[8] This basis for finding that claims are general (i.e., when the creditor and trustee causes of action are similar, but not identical) is discussed in the subsequent subsection.

[9] The Supreme Court has examined the meaning of the similar phrase, "applicable nonbankruptcy law" in section 541, and determined that it should be interpreted broadly. *See Patterson v. Shumate*, 504 U.S. 753, 757–60 (1992) (finding that transfer restrictions under ERISA constituted "applicable non-bankruptcy law" as defined in section 541(c)(2)).

The next question is whether ERISA permits a trustee to bring claims on behalf of ERISA claimants. There are analogous cases where bankruptcy trustees have successfully sought to avoid transfers under other federal statutes by standing in the shoes of creditors who had exclusive standing in the first instance. *See, e.g.*, *In re Lawrence Omansky*, 2022 WL 4281472, at *8–9 (Bankr. S.D.N.Y. Sept. 15, 2022) (observing prior cases finding that the Federal Debt Collection Practices Act constituted "applicable law" under section 544 before concluding that trustee had standing to step into shoes of the IRS for claims under the Internal Revenue Code). *Omansky* permitted a trustee to pursue such a claim despite the fact that "the statute [did] not specifically mention the ability of the [creditor] to collect taxes through a fraudulent transfer action or acts to void a transaction." *Id.*

Nevertheless, the Trustee has failed to point to anything in the ERISA statute that would dictate this result. Conversely, the Fund Group points to ERISA provisions that suggest that ERISA carefully limits the definition of the parties that have standing, (*see* Fund Group MTD Opposition at 9–10 (citing 29 U.S.C. § 1132(a))), and that ERISA assets "shall never inure to the benefit of an employer [like Debtor]." (*Id.* at 10 (quoting 29 U.S.C. § 1103(c)).) Moreover, given the underlying "trust law principles" that motivate the equitable and remediable provisions of ERISA, *see Lowen v. Tower Asset Management*, 829 F.2d 1209, 1220 (2d Cir. 1987), and the lack of controlling precedent on the issue, the Court concludes that the Fund Group (rather than estate creditors) holds the equitable interest in any diverted ERISA funds, which are not property of the bankruptcy estate, by analogy to Second Circuit cases addressing similar federal statutory schemes in the bankruptcy context.[10] A point raised at the outset of this Opinion is also

---

[10]      For instance, in *Genecco Produce Inc.*, the Second Circuit affirmed the District Court's finding that amounts owed by a defendant were held in a trust under the Perishable Agricultural Commodities Act (PACA) for the benefit of the debtor's suppliers and thus did not constitute property of the estate under the Bankruptcy Code.

17

important: the Debtor's unpaid contributions to the multiemployer plans potentially impacts benefits payable to employees of companies having no connection to the Debtor or Corporate Defendants. The Trustee clearly does not have standing to vindicate the rights of those other employees.

In sum, there is no basis to find that the Bankruptcy Code and ERISA statutes give the trustee standing to avoid transfers under ERISA itself, such that the Fund Group's claims would be considered general on that basis.

        (ii)    <u>Whether the Fund Group's ERISA Claims Allege a Factual Harm that Affects all Creditors</u>

As prefaced above, a creditor's claim against a third party is not particular simply because the trustee cannot bring the *exact claim* as the creditor. The Second Circuit has held that creditors with unique statutory claims against a third party are nevertheless "bound by the outcome of the trustee's action[s]," if the creditors' alleged injury "arise[s] from harm done to the estate and . . . seek[s] relief against third parties that pushed the debtor into bankruptcy." *See In re Madoff*, 818 F. App'x 48, 54, 57 (2d Cir. 2020) (finding that plaintiffs' claims for control person liability under the federal securities laws were "duplicative or derivative of the claims brought by the Trustee, or which could have been brought by the Trustee") (citations omitted). The proper analysis, then, involves a comparison between the harms that are subject of the creditors' claim and the harms that are actionable via the trustee's claims. Generally speaking, the trustee's available claims are focused on remediating the harm of assets being wrongfully transferred away from the estate.[11] Factually, the more that a creditor's claims focus on that

---

*See PACA Trust Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 276–77 (2d Cir. 2019) (citing to *Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280, 284 (2d Cir. 1996)).

[11]    "[T]he trustee's proper task 'is simply to collect and reduce to money the property of the estates for which (he is trustee).'" *See In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 67 (2d Cir. 2013) (quoting *Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416, 428–29 (1972)).

same harm, the more likely it is that they fall within the trustee's domain and are not particularized.

The clear purpose of the analysis is to determine whether the creditor's claims will interfere with the trustee's administration of the bankruptcy estate. *See Quigley, Inc.*, 676 F.3d 45, 56 (2d Cir. 2012) (noting that Second Circuit precedent "quite properly used the derivative/non-derivative inquiry as a means to assess whether the suits at issue would affect the bankruptcy estate"). If the trustee has a basis to recover assets wrongfully transferred from the debtor to a third party, the Bankruptcy Code generally supports the notion that the trustee be allowed to do so in the first instance, irrespective of claims that creditors have against the third party based on the same transfer(s) of assets.[12] Again, the upshot of this principle is that, although the creditors cannot bring their claims against the third party, the trustee can effectively remedy the same harm by bringing assets back to the estate for the benefit of all creditors.

The corollary to this principle is that claims are particular where creditors allege actionable harm against third parties beyond the harms that the trustee can remedy; this is effectively a restatement of the Supreme Court's holding in *Caplin*.[13] In these instances, there can be no concern about interference with the trustee's administration of the estate because, by definition, the trustee will have no available causes of action to remedy the alleged harm. It is important to note that this principle applies regardless of the creditors' parallel allegations

---

[12]      "That is why, after a company files for bankruptcy, creditors lack standing to assert claims that are estate property. Instead, the trustee is conferred the right to recover for derivative, generalized claims; only the estate is charged with ensuring equitable distribution of estate assets and preventing individual creditors from pursuing their own interests and thus diminishing the res available to the rest of the creditors. Even more, it encourages, as it did here, orderly settlements—an interest not taken lightly." *Tronox Inc. v. Kerr-McGee Oil & Gas Corp. (In re Tronox Inc.)*, 855 F.3d 84, 106 (2d Cir. 2017).

[13]      *See Caplin*, 406 U.S. 416, 428 ("[N]owhere in the statutory scheme is there any suggestion that the trustee in reorganization is to assume the responsibility of suing third parties on behalf of [creditors].")

regarding the Debtor and the third party.[14]  In other words, the fact that a creditor has one claim

for harms to the estate, which are remediable by the trustee, does not affect that creditor's

separate claim against a third party for harms that the trustee cannot remedy.  *See id.*

Specifically, particular claims against third parties are not defeated because they also

contain underlying allegations regarding diversion of assets by a controlling entity.  *See Picard*,

762 F.3d at 210–11 (noting that a claim is "not duplicative of another solely because it recites

some or all of the same facts," before holding that fraud actions against third party involving

transfer of funds was not disguised fraudulent conveyance action); *Variable-Parameter Fixture*

*Dev. Corp. v. Morpheus Lights*, 945 F. Supp. 603, 607–608 (S.D.N.Y. 1996) (concluding that

patent infringement claim against third party was not derivative, despite allegations that

controlling entity "siphoned assets from [debtor] and thereby damaged [debtor]" and was

debtor's alter ego).  Relatedly, it is abundantly clear to this Court that, while the purpose of the

derivative/non-derivative inquiry is to allow a trustee to retrieve assets that belong to the estate,

hypothetical considerations about what assets *could* redound to the estate if a creditors' claim

were to be assumed by a trustee should not control the analysis when the threshold question

requires asking whether the trustee is entitled to bring the claims in the first place.[15]

Turning to the instant case, it appears that the Trustee has a strong argument that the

Fund Group's claims are general, at least based on what they have in common with the Trustee's

potential claims.  The Trustee points out that most of the Fund Group's factual allegations align

---

[14]     *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) ("[T]he Trustee appeals to the
background bankruptcy policy disfavoring individual litigation that allows one creditor to 'steal a march' on the
others.  [The Trustee] notes that the plaintiffs in both [third-party actions] are creditors of the [debtor's] estate. But
the plaintiffs' right to enforce duties owed to them *is not qualified by the fact that they may also have claims against
the [debtor's] estate.*") (citations omitted) (emphasis added).
[15]     Judge Posner addressed this line of reasoning in *Steinberg v.* Buczynsk, 40 F.3d 890, 893 (7th Cir. 1994)
(stating that "[t]he trustee argues that since he is, in fact, the plaintiff in this adversary proceeding against the [third
party], any judgment he obtains will enure to the benefit of the bankrupt estate; he is therefore suing on behalf of the
estate, as he is authorized to do.  This reasoning is perfectly circular.")

with the relevant factors for state law alter ego claims that the Trustee would be entitled to bring. (*See* Motion to Dismiss at 4-8 (citing *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).)[16]  Additionally, the Fund Group's claims for liability against the Corporate Defendants critically relies on the Debtor's underlying violations to succeed.  (*See* Federal Action Complaint, ¶ 103) ("Because, at all relevant times, [Corporate Defendants] were alter egos of, successors of, and a single employer with PMTM LP, they are joint and severally liable to the Funds for PMTM LP's delinquency of at least $3,576,073.79.").  There is also obvious factual overlap with other state law alter ego or fraudulent conveyance claims the Trustee might bring to avoid transfers.  (*See, e.g.*, Fund Group MTD Opposition, at 3–4) (alter ego entities "used their complete domination and control over Debtor . . . to shift all operations and assets of Debtor" to an alter ego entity).  Particularly noteworthy is the fact that the Fund Group brought claims in its first complaint in the Federal Action to attack the transfer as fraudulent under New York State law based on many of the same allegations.[17]

This does not end the inquiry, however, as there are material *differences* between the ERISA and state law claims that are relevant to the analysis.  Namely, the legal showing necessary to prove ERISA alter ego liability is different from the legal showing the trustee would need to make for alter ego liability under state law.  *Lowen*, 829 F.2d at 1220 ("In determining whether to disregard the corporate form, we must consider the importance of the use of that form in the federal statutory scheme, an inquiry that generally gives less deference to the corporate form than does the strict alter ego doctrine of state law.") (citations omitted).  The existence of

---

[16]      The Trustee does not actually articulate this argument in its own brief, but the Court considers these arguments incorporated by the Trustee's attachment of the Motion to Dismiss (ECF Doc. # 4-3) and MTD Reply Brief (ECF Doc. # 4-5) from the Federal Action to its own motion.

[17]      *See generally, Tr. of the Local 7 Tile Industry Welfare Fund, et al. v. Samfet Marble, Inc., et al.*, No. 1:22-cv-00651-DG-RER (ECF Doc. # 1.)

doctrinal differences should come as no surprise; state law alter ego claims come in fifty

varieties and pertain to the general liability of corporations in the contexts of tort, contract, etc.,

while the ERISA claims arise from a federal statutory scheme targeted at achieving certain

objectives in the labor and employment context. *See id.*

The difficult and somewhat novel legal issue for our purposes is that, as the Second

Circuit observed in *Lowen*, the ERISA alter ego legal standard is not just distinct from state law

alter ego standards—it is less exacting. *Id.* Put differently, there is likely a range of factual

harms that are actionable under an ERISA alter ego theory but not actionable under a New York

alter ego theory. *See Ferrara v. Oakfield Leasing, Inc.*, 904 F. Supp. 2d 249, 270 (E.D.N.Y.

2012) (holding that "piercing the corporate veil is appropriate . . . despite the fact that no

wrongful conduct has been demonstrated," where wrongful conduct was a state law requirement

for veil piercing, distinguishing *Wm. Passalacqua*).

In light of this disparity, simply finding that all ERISA alter ego claims are derivative

based on a general resemblance to state law alter ego claims would run counter to the case law.

As discussed above, there are only two possible outcomes from the derivative/non-derivative

inquiry—either creditors are allowed to bring claims because they are particular, or at a

minimum, the trustee is allowed to bring actions that are the common subject of creditors' claims

to return assets to the bankruptcy estate.[18]  That makes good sense, given the underlying purpose

of the analysis is to prevent interference with a trustee's administration of the estate. *Tronox*

*Inc.*, 855 F.3d at 106 (stating that "the estate is charged with ensuring equitable distribution of

estate assets and preventing individual creditors from pursuing their own interests and thus

---

[18]    *See Tronox Inc.*, 855 F.3d at 99, 103 (stating that "when creditors have a claim for injury that is
particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy estate is precluded
from doing so" but when claims are derivative, the "trustee is the proper person to assert the claim, and the creditors
are bound by the outcome of the trustee's action").

diminishing the res available to the rest of the creditors").  The full contours of the Fund Group's

ERISA claims, and whether the Fund Group's Complaint properly alleges the elements of such

claims, would be a matter for the district court if the claims are not property of the estate.

Absent the bankruptcy case, the Fund Group certainly appears to have actionable ERISA claims.

Does bankruptcy displace those claims from the Funds Group?  Who benefits from any recovery

of unpaid contributions?  Would any recovery be limited to creditors of the Debtor's estate?[19]

The Court considers that it cannot, as the Trustee insists, exclusively focus on the *similarities* in

the factual harms underlying the claims (i.e., that they involved domination, a challenged

transfer, etc.) to control the analysis, when it is the substantive *differences* in the harms that

determine who has actionable claims.  Synthesizing the caselaw, this Court considers that the

inquiry to determine whether a claim is derivative not only involves comparing the similarities of

the harm alleged by one creditor to the harm suffered by all creditors, but also considers whether

the actionable harms alleged by the creditor are encompassed in the scope of harms that are

actionable by the trustee with resort to the claims available to him/her.

This Court's focus on both the similarities and differences of the claims at issue is

consistent with the controlling law in this circuit.  In *Tronox*, the Second Circuit made explicit

reference to the scenario that is unfolding here.  855 F.3d 84 (2d Cir. 2017).  In discussing the

cases involving tort and contract claims against third parties, the court first recalled general

principles:

> [E]very creditor in bankruptcy has an individual claim . . . against
> the debtor, whether it be in tort . . . , contract, or otherwise . . . .
> Individual creditors may wish to bring claims against third parties

---

[19]    While the Fund Group has filed a priority claim in Debtor's case, it is doubtful that priority claims would receive any recovery even if the Trustee could assert the claims and recovered the full amount of the unpaid contributions.  The estate has few if any assets, and the Petition and Schedules show that the Debtor has unpaid secured claims totaling approximately $7.7 million.  *See generally*, *In re Port Morris Tile & Marble LP* (Case No. 21-12116 (MG)) (ECF Doc. # 3, at Schedule A/B and Schedule D.)

to seek compensation for harms done to them by the debtor and secondary harms done to them by third parties in wrongfully diverting assets of the debtor that would be used to pay the claims of the individual creditor . . . Those claims are general – they are not tied to the harm done to the creditor by the debtor, but rather are based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claim against the debtor.

*Id.* at 103–104.

The court continued in a footnote, however: "[p]erhaps it would be a different matter if state law recognized a difference in successor liability between tort and contract claims. But, in any event, the parties have not raised the issue and we need not decide it." *Id.* at 104 n. 24. The Second Circuit explicitly referenced the possibility that differences in the substantive law underlying creditors' claims against third parties could have a bearing on the particularity determination. The Court finds that this guidance is especially relevant here, where there is not merely a substantive difference between two state law theories, but an alter ego theory that exists completely independent of state law via federal statute and federal common law.

The distinction between the federal ERISA and state law claims is underscored by the Fund Group's other alleged ERISA basis for liability—the single-employer liability theory, which is not only distinct from the alter ego theory, *see Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (stating that the alter ego and single-employer doctrines are "conceptually distinct") (citation omitted),[20] but has no ostensible state law counterpart. Other courts have found single employer claims particularized in the bankruptcy context for that reason. *See In re Pierport Dev. & Realty, Inc.*, 502 B.R. 819, 828–30 (Bankr. N.D. Ill. 2013).

---

[20]     The Fund Group also alleges that the Corporate Defendants are liable as "successors," but there is less clarity as to the distinction between a "successor" and "alter ego" theory.  The caselaw suggests that successor liability is actually just a factual context in which alter ego claims may arise.  *See, e.g.*, *Tr. of Empire State Carpenters Annuity, Apprenticeship, Labor–Mgmt. Co-op., Pension & Welfare Funds v. JJJ Concrete Corp.*, 2015 WL 790085, at \*9 (E.D.N.Y. Feb. 24, 2015) (stating that "the alter ego doctrine is primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer").

The Trustee makes no attempt to explain how state law alter ego claims would vindicate the Fund Group's rights under a single-employer ERISA theory here, and arguably does not even seek to enjoin this claim in its motion.[21]  And any recovery by the Trustee for the benefit of the estate is unlikely to result in a recovery on the priority claim of the Funds because of the very substantial senior claims of the secured creditors.  Congress and the courts have created numerous avenues for recovery of the unpaid contributions from a variety of third parties to further the strong federal interest in assuring recovery by multi-employer plans.

The Trustee argues that using the "label" of ERISA or LMRA on the claims is not conclusive (*see* MTD Reply Brief at 5), but neither is using the "label" of alter ego for the purposes of equating ERISA with state law.  All of this is to say that ERISA alter ego claims cannot be considered categorically general due to their similarities to state law alter ego claims. Conversely, the Court does not consider that the substantive differences render ERISA alter ego claims particular in every case.  *Labarbera v. United Crane & Rigging Servs., Inc.*, 2011 WL 1303146, at *6 (E.D.N.Y. Mar. 2, 2011) ("Not all ERISA alter ego and successorship claims are alike, and the analysis of whether a claim is personal or general is not dependent on whether the claim is an ERISA claim.")  To be sure, the Court is aware of cases in this Circuit where courts have found that ERISA alter ego claims were derivative.[22]  But the Court is not persuaded that same result should obtain here based on the factual allegations framed by the parties.

For one, there is a noticeable lack of explanation by the Trustee why, on these facts, he can remedy the harm the Fund Group complains of by resorting to state law actions requiring

---

[21]     Neither the briefs in the Federal Action nor this action pose distinct arguments as to the single employer theory, (*see generally*, Motion to Dismiss, MTD Reply Brief), and the Trustee does not seek to enjoin prosecution of single-employer claims in its proposed order.  (*See* Ex. A to ECF Doc. # 4.)

[22]     *See Trs. of the Plumbers Local Union No. 1 v. ENOBRAC Plumbing Inc.*, 2018 WL 3635049, at *11 (E.D.N.Y. Feb. 12, 2018); *Labarbera*, 2011 WL 1303146 at *8; *In re Cabrini Med. Ctr.*, 489 B.R. 7, 22 (S.D.N.Y. 2012); *Maney v. Fischer*, 1998 WL 151023, at *2 (S.D.N.Y. Mar. 31, 1998); *Gosconcert v. Hillyer*, 158 B.R. 24, 29–30 (S.D.N.Y. 1993); *Mangan v. Williams Sys. Ltd.*, 1990 WL 92695, at *3 (E.D.N.Y. 1990).

more rigorous factual showings than the actions available to the Fund Group.  Most cases in this Circuit finding ERISA claims to be derivative involved claims that were actually being pursued on behalf of the estate against the third parties in question.[23]  The leading Second Circuit cases that have found creditors' claims derivative in non-ERISA contexts involved instances where trustees brought actions against, or had used possible claims to extract settlements from, non-debtor third parties.  *See, e.g.*, *Madoff*, 818 F. App'x at 50 (trustee initiated adversary proceedings against, and settled claims with, non-debtor third party prior to suit in question); *Tronox Inc.*, 855 F.3d at 88 (same).  To be clear, the fact that the Trustee has not brought claims here seeking to recover unpaid contributions is not determinative; but the lack of any legal or factual explanation of the possible claims against the Federal Action Defendants makes it difficult to explain why the Fund Group should be prevented from proceeding with its ERISA claims.

Moreover, it is also not clear from the face of the Fund Group's Federal Action Complaint that the harm alleged is common to all creditors.  Again, the Trustee mainly focuses on arguing that the facts in the Federal Action Complaint overlap with the relevant facts for a state law alter ego action, but that does not render the claims general.  Instead, as the Second Circuit has stated, creditors' claims are general when limited to allegations of "secondary harms done to them by the third parties in wrongfully diverting assets of the debtor."  *Tronox Inc.*, 855 F.3d at 103.  In *Tronox*, the Second Circuit found that the claims were general because they were based on conduct that occurred before the third party even existed, and there were no real

---

[23]    *See Cabrini*, 489 B.R. at *11 (creditors' committee brought and settled actions against alleged alter ego in the bankruptcy case); *Labarbera*, 2011 WL 1303146 at *9 (trustee intervened in creditors' action against non-debtor to oppose standing where trustee was engaged in mediation with the non-debtor in the bankruptcy case); *Mangan*, 1990 WL 92695 at *1 (trustee had initiated action in bankruptcy court against alleged alter ego for fraudulent conveyances).

allegations regarding the third party's direct liability.  *See id.* (observing that the "[third party] could not have engaged in torts prior to its existence, and the [creditors] have not put forth facts supporting a claim that [the third party] breached a duty to them after it came into existence").[24]

        Here, however, the Fund Group's claim is that controlling entities (including the Corporate Defendants) and individuals transferred operations for ongoing work away from the Debtor, in direct response to an audit and claims made by the Fund Group regarding unpaid contributions.  (*See* Federal Action Complaint ¶¶ 9, 101.)  While it may be the case that failures to remit payments originated with the Debtor in the first instance, the Fund Group makes allegations regarding the Corporate Defendants' conduct with respect to the Debtor and involvement in actions to avoid remitting payment that create independent liability for the Corporate Defendants under the ERISA statute.[25]  This is a far cry from the wholly indirect liability in *Tronox* and the cases in this Circuit finding certain ERISA claims general where plaintiffs' allegations regarding non-debtors were lacking.[26]  For instance, after finding that the

---

[24]     The Second Circuit continued to posit other ways that direct liability might have arisen via the third party's involvement in the underlying tort.  *See id.* at 104-105 ("[T]he [creditors] could have raised direct claims that, for instance, [the third party] instructed its subsidiaries not to clean up the toxic site or were negligent in their supervision of the cleanup.").  Notably, both scenarios still presume some underlying violation by the debtor.  The Trustee's argument that the claims are general because liability depends in part on the Debtor's underlying violations (*see* Fund Group MTD Opposition at 4), clearly lacks force.  That non-debtors can have independent obligations arising from both their own conduct and a debtor's conduct does not render claims against that non-debtor property of the estate once a bankruptcy case is commenced.  Particular claims against a non-debtor can arise based on underlying violations or breaches by a debtor, whether they sound in tort, as the Second Circuit posited in *Tronox*, or in contract, for instance, when claims are made against guarantors based on the events related to the debtor's default.  *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287–88 (2d Cir. 2003) (concluding that automatic stay does not apply to actions against debtor's guarantor absent immediate adverse consequences for the debtor's estate).

[25]     The Fund Group argues that the alter ego liability renders the Corporate Defendants "employers" under the ERISA statute.  (*See* Fund Group MTD Opposition at 11 (citing 29 U.S.C. § 1145).)  *Cf. Maney v. Fischer*, 1998 WL 151023, at *1 n.1 (S.D.N.Y. Mar. 31, 1998) ("It is conceivable that plaintiffs' allegation that [non-debtors] are 'employers' within the meaning of § 3(5) of ERISA could form the basis of a claim of direct injury.  However their submissions to the Court have not substantiated such a claim.") (citations omitted).

[26]     *See id.* (noting that plaintiffs had only alleged alter ego liability by claiming that non-debtors "used [debtor] funds for personal purposes" and "failed to observe the corporate formalities in their administration" of the entities) (citations omitted); *ENOBRAC Plumbing, Inc.*, 2018 WL 3635049 at *11 ("The [creditors] seek . . . contributions from [non-debtor] based on it being an alter ego and helping [debtor] avoid obligations. But in so doing they do not

alter ego ERISA claims were general in *Labarbera*, the court noted that there was an absence of

allegations regarding the non-debtor's own conduct with respect to the Debtor and ERISA

obligations, which are arguably present here.[27]

The Court cannot conclude that the Federal Action Complaint fails to cross the line into

allegations of particular harm when "accept[ing] all factual allegations in the complaint as true"

and "drawing all reasonable inferences in favor of" the Fund Group, as the district court will be

required to do in the Federal Action.[28]  *Moore v. City of New York*, 2017 WL 35450, *10

(S.D.N.Y. Jan. 3, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, the Trustee assures the Court that it should be the party bringing these claims on

behalf of creditors like the Fund Group, but has not adequately explained why he is entitled to do

so.  At this juncture, the Court finds the Second Circuit's decision in *Picard v. Fairfield*

*Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014), particularly instructive, as it addressed application

of the automatic stay to actions against third parties, which is what the Trustee effectively seeks

here.  There, the trustee sought to stay actions against the debtor's lessor to prevent adverse

effects on the debtor's estate.  *Id.* at 207–208.  The Second Circuit rejected application of the

automatic stay and stated that "[w]e decline to extend our holding . . . to automatically stay

actions taken against third parties that are only factually likely, as opposed to legally certain, to

---

allege that [non-debtor] took particularized action against them in comingling assets and operations with [non-debtor].")

[27]    *See Labarbera*, 2011 WL 1303146, at *8 ("[T]here are no allegations in the complaint that their working 'in cahoots' was in any way related to [debtor's] avoidance of ERISA contributions. For example, Plaintiffs have not alleged that [non-debtor] directed [debtor's] refusal to pay ERISA contributions or that [non-debtor] took action to render [debtor] insolvent for the purpose of avoiding ERISA contributions."").  The court in *Labarbera* contrasted *Trs.' of the Bricklayers Local 7 Pension Tr. v. Stileitaliano Int'l*, 2004 WL 1774223, *4 (N.D.Cal. Aug.6, 2004), in which the ERISA injury was particularized because "plaintiffs alleged that the alter ego defendants and [debtor] agreed to take actions together, such as subcontracting work and undercapitalizing [debtor], to avoid paying ERISA contributions."  *Labarbera*, 2011 WL 1303146, at *7.

[28]    To be clear, however, the conclusion reached here in no way binds the district court in ruling on the pending motion to dismiss.  ERISA issues on direct claims belonging to the Fund Group are the province of the district court and not this Court.

impact estate property." *Id.* The same can be said here. Neither the Trustee's factual nor legal arguments resolve the unique issues posed by the ERISA claims, and as a result, the concerns regarding the impact on administration of the estate are too speculative to enjoin an action that the Fund Group is uniquely entitled to bring under the federal statute.

As a final note, this Court must also acknowledge that it is not tasked with dismissing or allowing the Fund Group's claims at present moment. Instead, and in another layer of distinction from the ERISA caselaw in this Circuit, the Court is charged with determining whether the Trustee is likely to succeed on the merits. *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). And while it may ultimately be the case that the Federal Action Complaint is dismissed in the Federal Action, it is quite another thing to say that that outcome is likely given the issues that are present here.

### b. *Claims Against the Individual Defendants: State Law Veil Piercing*

The Fund Group's second claim in the Federal Action Complaint is brought against the Individual Defendants in that case for "Piercing the Corporate Veil under New York Law." (*See* Federal Action Complaint ¶¶ 106–111.)[29] As pleaded, this claim does not appear to be general such that it belongs to the Trustee, for the simple reason that it only states veil piecing claims as between the Corporate Defendants and Individual Defendants, and neither are debtors here.

The caselaw controlling whether these claims are property of the estate and barred by the automatic stay is the same as for the claims discussed above. The only difference is that the Fund Group appears to argue that the claims are particularized based on the definition of those claims under state law, as opposed to ERISA. Specifically, the Fund Group argues that its claims are particularized because New York law requires a showing that there was a "wrong

---

[29]     The header for the Fund Group's veil piercing claim states that it is made against "defendants," but the allegations in that section are only directed at the individual defendants in the case. *See id.*

against the plaintiff which resulted in plaintiff's injury." *Matter of Morris v. N.Y.S. Dept. of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993).

It is unclear why the Fund Group even makes this argument, however, as the veil piercing claims are entirely between non-debtors. (*See* Federal Action Complaint, at 20) (seeking an order "finding that Defendants Berberi and Auerbach abused the corporate form of Corporate Defendants … thereby justifying the piercing of the corporate veil among Defendants"). To the extent the Fund Group seeks to pierce the corporate veil of the Debtor under state law to reach any of these Defendants, that claim would fall squarely within the category of claims that the Trustee is entitled to bring *itself* on behalf of a debtor. *In re Keene Corp.*, 164 B.R. 844, 851–52 (Bankr. S.D.N.Y. 1994) (holding that state law veil-piercing claims are generally available to creditors). But the Debtor is not named as a defendant in the Federal Action Complaint. Here, there is no doubt that claims to pierce the corporate veil of a non-debtor to reach other non-debtors do not belong to the estate, and there is no reason to consider whether such claims are general or particular.

### 2.   Favorable Balance of Hardships and Serious Questions Going to the Merits

Under the traditional requirements for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, a movant must show that it will suffer irreparable harm in the absence of the relief requested *in addition to showing* that they are: (1) likely to succeed on the merits, or that there are (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citation omitted). As discussed above, the Trustee has not shown a likelihood of success on either claim. The Trustee has also failed to show that the balance of hardships tips in his favor.

The Trustee's briefing only devotes two sentences to the balance of hardships, and fails to show that it tips "decidedly" in his favor.  First, the Trustee states that "[t]he Fund Group will suffer no prejudice because the Federal Court Action has not even proceeded to the motion to dismiss stage."  (P.I. Motion Brief at 11.)  This is no longer accurate, and it does not adequately explain why enjoining the Federal Court Action would not work a hardship on the Fund Group. Also, as already stated, the unpaid contributions resulted in injuries to multiemployer plans, which provide benefits to employees and retirees who never had any connection to the Debtor or its affiliates.  Second, the Trustee claims that he "is stymied in his administration of the bankruptcy estate, because he has not been able to gain complete control over the assets of the estate, specifically, the potential alter ego and veil piercing claims."  (*Id.*)  To be clear, the fact that the Fund Group is bringing particular claims in the Federal Action in no way prevents the Trustee from bringing actions against non-debtors in connection with the bankruptcy case.  This conclusory argument does not show that the hardships tip decidedly in the Trustee's favor.  As a result, the Trustee has not satisfied the requirements for an injunction under Rule 65 of the Federal Rules of Civil Procedure.  Considering the irreparable harm element is unnecessary as a result.

Additionally, there is no exception to the harm requirement here considering that in failing to show the Trustee's likelihood of success (i.e., entitlement to exclusively bring claims in this case), the injunctive relief requested is not necessary to effect the bankruptcy court's own jurisdiction in the case.  *See Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (finding case law in this district has established a limited exception to the irreparable harm requirement where the action to be enjoined is one that would

impair the court's jurisdiction).  As a result, the Trustee has also failed to show that an injunction

is warranted under Section 105(a) of the Bankruptcy Code.

### IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court **DENIES** the Trustee's Motion for a Preliminary

Injunction with respect to the Federal Action.


Dated:    October 6, 2022
          New York, New York

*Martin Glenn*
_____

MARTIN GLENN
Chief United States Bankruptcy Judge
